THOMAS HUNDLEY *v.* H. N. SPENCER and another.

Where a factor who has received instructions to pay a debt out of the proceeds of property consigned to him for sale, for the purpose of preventing an attachment, advances the amount, and pays the debt before any attachment is levied, his privilege for such advance on the property consigned will be superior to that acquired by a subsequent attachment.

THE plaintiff is appellant from a judgment of the Commercial Court of New Orleans, *Watts*, J., in favor of Stephen Franklin and John D. Henderson, garnishees.

*J. W. Smith*, for the appellant.

*Maybin*, for the garnishees.

MORPHY, J. This suit began by attachment. Franklin and Henderson, commission merchants of this city, were made garnishees, and the usual interrogatories propounded. In their answers, they acknowledge that they owe a small sum of money to H. N. Spencer, and that they hold sixty four bales of cotton belonging to J. Grafton, the other defendant, and consigned to them for sale, on which cotton they claim a privilege and preference for advances on it to the amount of $2,187 50. Judgment was en-

tered below in favor of the plaintiff for the amount claimed, and the garnishees were ordered to pay over the sum admitted to be due to the defendant, Spencer, reserving for a future trial a rule taken on the garnishees to show cause why the proceeds of the sixty four bales of cotton attached in their hands, should not first be applied to the payment of the plaintiff's judgment.

The record shows that Grafton being indebted to the Canal Bank in this city, in a sum of about $6000, under a judgment obtained in Mississippi where he resides, had directed Franklin and Henderson to make an arrangement with the bank, by which, on paying in November, 1840, a sum of $3000 out of the proceeds of his cotton, a stay of execution for six months should be granted for the balance, to prevent his property from being levied upon and sacrificed to satisfy the judgment. After much negotiation between the garnishees and the bank, who declined to accept the proposition at that time, Grafton instructed his agents to pay unconditionally to the bank the $3000 out of the proceeds of his cotton, after discharging sundry small debts which he mentions to them; requesting at the same time that, after making this payment, they would use every possible exertion to obtain from the bank some indulgence, by granting time, for the balance of his debt. On the 6th of February, 1841, Franklin and Henderson becoming apprehensive that the intended appropriation of the proceeds of this cotton might be interfered with by some attachment which they understood was about to issue against Grafton, paid to the Canal Bank the $3000 as an advance on the cotton which they had not yet sold, and this sum was by order of the bank credited to Grafton according to his wishes, on the execution standing against him in Mississippi. Under these circumstances, the judge below allowed the privilege of the garnishees, and the plaintiff appealed.

The evidence clearly establishes that the money was paid to the Canal Bank, before the levying of plaintiff's attachment. The return of the sheriff states, it is true, that the writ was placed in his hands on the 6th of February, 1841, but it does not show when the service was made. It is not therefore at all inconsistent with the testimony of Canfield, the clerk of the garnishees, who testifies that he was in the office of the latter when the sheriff's officer

served the attachment; and that on receiving the paper he wrote on it with his pencil a memorandum which was produced on thn trial, and which shows the notice to have been received by him oe Monday morning the 8th of February, 1841, at about nine o'clock. The writ issued probably at a late hour on the preceding Saturday, and could not be served on the same day. This testimony is moreover corroborated by the president and cashier of the bank, who state that when Franklin paid the money on Saturday the 6th of February, he said to them that no attachment had actually issued, but that he had reason to fear that the amount he was directed to pay the bank might be attached in his hands. But it is urged that Franklin and Henderson had no authority from Grafton to make any advances to or for him; that his letters show that his debt was to be paid to the bank out of the proceeds of his cotton, and that the advance was made only with a view to cover the sixty four bales of cotton and defeat the plaintiff's attachment.

We can hardly believe that Franklin and Henderson were violating the orders of Grafton, or acting without authority, when they voluntarily paid as an advance on his cotton, a debt which he had repeatedly directed them to discharge out of its proceeds. In commercial parlance, the term *proceeds* means, we believe, the money or fund represented by the property consigned. If a factor undertakes or receives orders to make a payment out of the proceeds of a consignment, it is well understood, and such we believe is the usage among commission merchants, that if the produce consigned is yet on hand when the time of payment arrives, the factor is to advance the money; and that in so doing, he is considered as paying out of the proceeds of the property. Such appears to have been the understanding of Grafton, for by his proposition to the bank, the $3000 were to have been paid in November, 1840, when at this early part of the business season he could hardly expect that his cotton would have been sold. Had the bank then accepted the proposed arrangement, and had the money been paid at that time by Franklin and Henderson, they would have done nothing more than what was expected of them by Grafton; and moreover, the latter would have been thankful to them for an advance which they were not strictly bound to make, In the course pursued by Franklin and Henderson, we can see

nothing to blame ; they acted with the avowed intention of defeating any attachments against Grafton, which might prevent the appropriation he had made of his money to pay a legitimate debt which it was his interest to discharge. He had surely the right of paying one creditor in preference to another; and in acting as they did, the garnishees complied with his often expressed wishes and injunctions. In this, they did no injury to the plaintiff, whose rights, under his attachment, had not vested, when they paid Grafton's debt to the bank.

*Judgment affirmed.*